## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE RULE 45 SUBPOENAS TO NON-
PARTIES EPSTEIN BECKER & GREEN, P.C.
AND EBG ADVISORS, INC.
1227 25th Street, N.W., 7th Floor
Washington, D.C. 20037

in the matter of

UNITED STATES OF AMERICA, EX REL.,
ANTHONY R. SPAY,
c/o Marc S. Raspanti, Esq.
Pietragallo Gordon, et al.
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103

                                        Plaintiff,

                    - against -

CVS CAREMARK CORPORATION;
CAREMARK Rx, LLC (f/k/a CAREMARK Rx,
INC.),
2211 Sanders Road
Northbrook, Illinois 60062;

CAREMARK, LLC (f/k/a CAREMARK, INC.),
2211 Sanders Road
Northbrook, Illinois 60062; and

SILVERSCRIPT, LLC (f/k/a SILVERSCRIPT,
INC.),
2211 Sanders Road
Northbrook, Illinois 60062

                                        Defendants.

MISC. NO. _____

[Underlying civil action filed in the
Eastern District of Pennsylvania,
Case No. 09-4672]

MOTION TO QUASH
SUBPOENAS

Non-parties Epstein Becker & Green, P.C. and EBG Advisors, Inc., by and through

undersigned counsel, hereby respectfully move under Fed. R. Civ. P. 45 and 26 at the United

FIRM:25762096v2

States District Court for the District of Columbia, for an Order Quashing the Subpoenas in the underlying matter pending in the Eastern District of Pennsylvania.

As set forth in the accompanying Certification of Christopher M. Farella, with annexed exhibits, and the Memorandum of Law, the grounds for this motion are: (a) the subpoena presents an undue burden due to its exceptionally broad scope and the lack of relevance of the requested discovery to Plaintiff's claims; (b) the attorney-client privilege shields the documents from disclosure; and (c) the work product privilege shields the documents from disclosure.

The required discussion pursuant to LCvR 7(m) occurred in this matter and it is believed that this motion will be opposed by counsel for relator, Anthony Spay.

A form of order accompanies this motion.

ORAL HEARING REQUESTED

EPSTEIN BECKER & GREEN, P.C.

By: _____
George B. Breen (DC Bar No. 428665)
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel. (202) 861-0900
Fax (202) 296-2882
gbreen@ebglaw.com

Attorneys for Epstein Becker & Green. P.C.
and EBG Advisors, Inc.

DATED: July 11, 2014

## Certificate of Service

I hereby certify that copies of the forgoing Motion to Quash Subpoenas, together with the Certification of Christopher Farella, Memorandum of Law, and form of order mentioned therein, were served via hand delivery to the Court and via electronic mail on all counsel in the underlying civil action, at the following addresses:

Paul A. Traina, Esq.
Engstrom, Lipscomb & Lack, P.C.
10100 Santa Monica Blvd., 12th Fl.
Los Angeles, CA 90067-4113
Tel. (310) 552-3800
Fax (310) 552-9434
ptraina@elllaw.com

Marc S. Raspanti, Esq.
Pietragallo Gordon  et al.
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Tel. (215) 320-6200
Fax (215) 981-0082
msr@pietragallo.com

Michael I. Leonard, Esq.
Leonard Law Offices
203 N. LaSalles Street, Suite 1620
Chicago, IL 60601
Tel. (312) 380-6559
mleonard@leonardlawoffices.com

Attorneys for Defendants:

Enu Mainigi, Esq.
Williams & Connolly, LLP
725 12th Street, NW
Washington, D.C. 20005
Tel. (202) 434-5420
emainigi@wc.com

Thomas Gallagher, Esq.
Pepper Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799
Tel. (215) 981-4000
gallaght@pepperlaw.com

AND for United States of America

Thomas F. Johnson, Esq.
U.S. Attorneys Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel. (215) 861-8282
Fax (215) 861-8618
thomas.johnson@usdoj.gov


George B. Breen

Dated:  July 11, 2014

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

IN RE RULE 45 SUBPOENAS TO NON-
PARTIES EPSTEIN BECKER & GREEN, P.C.
AND EBG ADVISORS, INC.
1227 25th Street, N.W., 7th Floor
Washington, D.C. 20037

in the matter of

UNITED STATES OF AMERICA, EX REL.,
ANTHONY R. SPAY,
c/o Marc S. Raspanti, Esq.
Pietragallo Gordon, et al.
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103

                                Plaintiff,

               - against -

CVS CAREMARK CORPORATION;
CAREMARK Rx, LLC (f/k/a CAREMARK Rx,
INC.),
2211 Sanders Road
Northbrook, Illinois 60062;

CAREMARK, LLC (f/k/a CAREMARK, INC.),
2211 Sanders Road
Northbrook, Illinois 60062; and

SILVERSCRIPT, LLC (f/k/a SILVERSCRIPT,
INC.),
2211 Sanders Road
Northbrook, Illinois 60062

                            Defendants.

MISC. NO. _____

**[Underlying civil action filed in the
Eastern District of Pennsylvania,
Case No. 09-4672]**

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 1

    A.    The Parties ............................................................................................... 1

    B.    Nature of the Action ................................................................................ 2

    C.    EBG, EBGA, and Thomas Hutchinson .................................................. 2

    D.    Notice of Deposition of Thomas Hutchinson .......................................... 3

    E.    Subpoenas ................................................................................................ 4

LEGAL ARGUMENT ...................................................................................................... 6

    POINT I .......................................................................................................... 6

    THE SUBPOENAS SHOULD BE QUASHED

    A.    The Subpoenas are Unduly Burdensome and the Categories of Documents
        Seek Irrelevant Evidence ....................................................................... 7

    B.    The Subpoenas Impermissibly Infringe Upon the Attorney-Client Privilege
        and the Work Product Doctrine .............................................................. 11

        1.    Attorney-Client Privilege ........................................................... 11

        2.    Work Product Privilege ............................................................... 12

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Howmedica Leibinger, GmhH,*
    190 F.R.D. 518 (E.D. Tenn. 1999) ........................................................................... 9

*Cobell v. Norton,*
    213 F.R.D. 69 (D.D.C. 2003) ........................................................................... 12, 14

*Concord Boat Corp. v. Brunswick Corp.,*
    169 F.R.D. 44 (S.D.N.Y. 1996) ........................................................................... 8

*Food Lion v. United Food & Commercial Workers Union,*
    100 F.3d 1007 (D.C. Cir. 1997) ........................................................................... 7

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,*
    333 F.3d 38 (1st Cir. 2003) ........................................................................... 7

*In re England,*
    375 F.3d 1169 (D.C. Cir. 2004) ........................................................................... 11

*In re IBM Peripherals Litigation,*
    77 F.R.D. 39 (N.D. Cal. 1977) ........................................................................... 9

*In re Kellogg Brown & Root, Inc., et al,*
    2014 U.S. App. LEXIS 12115 (D.C. Cir. June 27, 2014) ..................................... 11

*Krase v. Graco Children Prods., Inc.,*
    79 F.3d 346 (2d Cir. 1996) ........................................................................... 10

*Laxalt v. McClatchy,*
    116 F.R.D. 455 (D. Nev. 1986) ........................................................................... 7

*Mack v. Great Atlantic & Pacific Tea Company,*
    871 F.2d 179 (1st Cir. 1989) ........................................................................... 9

*\*McVicker v. King,*
    266 F.R.D. 92 (W.D. Pa. 2009) ........................................................................... 10

*\*Micro Motion, Inc. v. Kane Steel Co.,*
    894 F.2d 1318 (Fed.Cir.1990) ........................................................................... 8, 9

*\*North Carolina Right to Life v. Leake,*
    231 F.R.D. 49 (D.D.C. 2005) ........................................................................... 7, 8

ii

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984) ..................................................................7

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) .....................................................................11

*\*Schmulovich v. 1161 Rt. 9 LLC, et al.*,
    2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug. 15, 2007) .......................6, 7

*Shapiro v. United States DOJ*,
    969 F. Supp. 2d 18 (D.D.C. 2013) .........................................................12

*St. John v. Napolitano*,
    274 F.R.D. 12 (D.D.C. 2011) ...................................................................8

*Stamy v. Packer*,
    138 F.R.d. 412 (D.N.J. 1990) ...................................................................7

*\*U.S. v. Nobles*,
    422 U.S. 225 (1975) ...............................................................................12

*\*Upjohn Co. v. U.S.*,
    449 U.S. 383 (1981) .........................................................................11, 12

*Wachtel v. Health Net, Inc.*,
    482 F.3d 225 (3d Cir. 2007) ...................................................................11

*Watts v. S.E.C.*,
    482 F.3d 501 (D.C. Cir. 2007) ..................................................................7

**OTHER AUTHORITIES**

Federal Practice § 37.22[2][B] ......................................................................9

Fed.R.Civ.P. 26(b)(1) .....................................................................................6

Fed.R.Civ.P. 45 ..................................................................................1, 6, 8, 11

Red.R.Civ.P. 45(d)(1) .....................................................................................8

Fed.R.Civ.P. 45(d)(3) .....................................................................................6

Fed.R.Civ.P. 45(d)(3)(A)(iii) .......................................................................11

Fed.R.Civ.P. 45(d)(3)(A)(iv) .........................................................................7

Fed.R.Evid. 401 ............................................................................................10

iii

## PRELIMINARY STATEMENT

Epstein Becker & Green, P.C. and EBG Advisors, Inc. ("EBG" and "EBGA" respectively) submit this memorandum of law in support of an application for an Order pursuant to Federal Rule of Civil Procedure 45 quashing two non-party subpoenas served by plaintiff, Anthony Spay ("Spay") upon EBG and EBGA,.

Simply stated, Spay has issued two subpoenas whose overbreadth and categories for documents are unduly burdensome and seek privileged information.   EBG and EBGA are not parties to the within litigation and do not have an interest in its resolution.  The only tangential relationship EBG and EBGA have to this matter at the present time is that one of its employees, a former director at The Centers for Medicare and Medicaid Services ("CMS"), has been noticed for his deposition to testify as to matters when he was employed by CMS.    Despite the limited nature of this fact deposition, Spay now seeks voluminous records and documents concerning clients of EBG and EBGA – wholly unrelated to this action – for a period of eight years, as well as privileged information relating to their clients, including CVS Caremark.

As will be demonstrated in more detail below, Rules 26 and 45 mandate that these subpoenas should be quashed.

## FACTUAL BACKGROUND

### A.     The Parties

As alleged in the underlying First Amended Qui Tam Complaint ("Complaint"), Plaintiff Spay is a licensed physician with approximately thirty-seven years of diversified experience within the pharmacy industry. *See* Certification of Christopher Farella ("Farella Cert.") at Ex. A, Am. Compl. ¶¶ 8-21. He alleges that he is not only a licensed pharmacist, but has been involved with pharmacy management, benefits management, long-term care, behavioral health, executive

management, prescription drug fraud/abuse detection, audits, and recovery for many of the nation's largest payers and pharmacy claims processors. *Id.*

The Complaint further asserts that Defendant CVS Caremark Corporation ("CVS Caremark") is the largest provider of prescriptions and related healthcare services in the United States. *Id.* ¶ 22. CVS Caremark participates in the Medicare Part D prescription drug program and has provided Part D Pharmacy Benefits Manager ("PBM") services to its clients' Part D Plans through its subsidiaries, Silverscript, Inc., Caremark LLC, CaremarkPCS, CVS Caremark Part D Services, LLC, and RxAmerica, LLC. *Id.* ¶ 33.[1] ¶

**B.  Nature of the Action**

Currently pending before United States District Court, Eastern District of Pennsylvania is an action entitled *United States of America, ex rel. Anthony R. Spay v. CVS Caremark Corporation; Caremark Rx, LLC (f/k/a Caremark Rx, Inc.); Caremark, LLC (f/k/a Caremark, Inc.); and SilverScript, LLC (f/k/a Silverscript Inc.)*(the "Action"). Generally, the present litigation is an action to recover damages and civil penalties on behalf of the United States of America arising from allegedly false and/or fraudulent records, statements and claims made, used, and caused to be made, used, or presented by Defendants. *Id.* at ¶ 1. The government declined to intervene in the Action. Neither EBG nor EBGA are parties to the Action or have any interest in its outcome.

**C.  EBG, EBGA, and Thomas Hutchinson**

EBG is a law firm serving clients in areas of practice including Health Care and Life Sciences, Labor and Employment, Litigation, Corporate Services, and Employee Benefits. *See*

---

[1] Remaining defendant descriptions, irrelevant for purposes of this motion, are found at ¶¶ 40-43, 45-46, 48-49, 52, 54-59.

FIRM:25707113v2

Farella Cert. at ¶ 3. EBG has approximately 250 lawyers practicing in 10 offices throughout the United States—Baltimore, Boston, Chicago, Houston, Los Angeles, New York, Newark, San Francisco, Stamford, and Washington, DC. *Id.*

EBGA is a Washington, D.C. based consultancy. EBG Advisors is a network of international attorneys, policy analysts, strategists and other professionals who specialize in providing coordinated guidance and solutions across various segments of the health care industry. *Id.* at ¶ 4. EBGA is affiliated with EBG. *Id.* EBG and EBGA represent a number of prominent national healthcare companies, including CVS Caremark, in various legal and regulatory matters. *Id.* at ¶¶ 3-4.

Thomas Hutchinson ("Hutchinson") is a Strategic Advisor for EBGA. He joined EBGA in October 2013. *See* Farella Cert at ¶ 5. Mr. Hutchinson spent 18 years working with CMS, where he held a variety of positions. *Id.* at ¶ 6. At times relevant to the Action, Hutchinson served as the director of the Medicare Plan Payment Group at CMS, where he was responsible for all aspects of annual Medicare payments to Part C (Medicare Advantage) and Part D (drug) plans. *Id.*

**D.      Notice of Deposition of Thomas Hutchinson[2]**

By letter dated March 18, 2014, counsel for CVS Caremark, Enu Mainigi, requested authorization from the Centers for Medicare and Medicaid Services ("CMS") to depose Hutchinson. *See* Farella Cert at ¶ 7, Ex. B.[3] The letter sets forth eight separate topics in which

---

[2] Upon information and belief, it is likely that the deposition of Hutchinson will be adjourned to a later date, presumably to sometime in September 2014 or thereafter.

[3] Spay was aware of the deposition request prior to Hutchinson meeting with the government to discuss the topics contained in Ms. Mainigi's letter. *See* Farella Cert. at ¶8, Ex. C.

FIRM:25707113v2

Hutchinson's testimony is sought. Specifically, each and every topic relates specifically to the time in which Hutchinson served as the director of the Medicare Plan Payment Group at CMS, and has absolutely no connection to any work he has done since joining EBG. Through discussions between the government and CVS Caremark, it is believed that CMS will permit Hutchinson to be deposed on two of the eight subjects. *See* Farella Cert. at ¶ 10, Ex. D. These areas are:

    a.    Hutchinson's knowledge of CMS' expectations regarding new Medicare Part D beneficiaries' continued access to prescription drugs in 2006 or 2007, including his understanding of the steps taken by CMS to ensure access to care when the Medicare Part D program launched or from the inception of the beneficiaries' coverage; and

    b.    Hutchinson's knowledge of the payment reconciliation process for Medicare Part D claims submitted for 2006, including his understanding of CMS's reasons for extending and/or reopening the date for submitting PDEs for 2006, his knowledge of CMS's acceptance of PDEs submitted in 2006 with certain types of error, and his knowledge of which PDE data fields CMS used to calculate payment.

*See* Exhibit D. Importantly, Hutchinson is being deposed purely as a fact witness, as to his knowledge for the relevant time periods of 2006 and 2007. He is not being deposed as an expert witness.

**E.    Subpoenas**

On June 25, 2014, Spay served subpoenas on both EBG and EBGA. Although addressed to different entities, the subpoenas are identical in the categories of documents they seek. In pertinent part, the categories of documents sought are those which:

    1.    Identify PBMs EBG and EBGA have represented since January 1, 2006 to the present;

    2.    Identify PBMs EBG and EBGA have advised since January 1, 2006 to the present;

    3.    Identify Medicare Part D sponsors represented by EBG and EBGA since January 1, 2006 to the present;

4

4.    Identify Medicare Part D sponsors advised by EBG and EBGA since January 1, 2006 to the present;

5.    Identify any cases where EBG and EBGA have represented or currently represent CVS Caremark since January 1, 2006 to the present.

Other categories seek an equally broad range of documents:

6.    Any and all documents relating to the Action;

7.    Communications between EBG and EBGA, and Williams and Connolly, LLP, Pepper Hamilton, LLP, and Foley Lardner, LLP regarding the Action;

8.    EBG and EBGA revenue earned related to representation or advisement of CVS since January 1, 2006 to the present;

9.    Identities of current or former employees that were previously employed by CMS; and

10.   Identities of current or former employees that were previously employed by CVS.

*See* Farella Cert. at Exs. E and F.

The definition of "Documents" contained in the subpoenas encompasses every conceivable form of writing or record including drafts, back-up tapes, cloud-based storage, and metadata, to mention but a few. *See id.* The term "represent", "represented", and "representation" means the engagement of EBG and EBGA for legal services. *Id.* "Advise", "advised", or "advisement" includes engagements of EBG and EBGA by clients for regulatory and legal compliance related to Medicare and Medicaid programs. *Id.*

With such broad, sweeping categories, dating back eight years, discovery by way of the subpoenas at issues seems to be Spay's way of delving into EBG's and EBGA's operations, business and legal dealings, and confidential client matters where there is no claim against EBG or EBGA. A "meet and confer" was conducted in an effort to narrow these categories, but was unsuccessful. *See* Farella Cert. at ¶14.

5

## LEGAL ARGUMENT

## THE SUBPOENAS SHOULD BE QUASHED

Spay's attempt to extract discovery from two non-parties by serving them with subpoenas requesting documents in an over broad and impermissible manner runs afoul of the precepts of the rules of discovery. Additionally, the categories of documents being sought are irrelevant and infringe upon the attorney client and work product privilege. Therefore, the subpoenas should be quashed.

A Rule 45 subpoena served in conjunction with the discovery process "must fall within the scope of proper discovery under Fed.R.Civ.P. 26(b)(1)." *Schmulovich v. 1161 Rt. 9 LLC, et al.*, 2007 U.S. Dist. LEXIS 59705, at *2 (D.N.J. Aug. 15, 2007). Plainly, this Court has the authority pursuant to Fed.R.Civ.P. 45(d)(3) to quash any subpoena that "falls outside the scope of permissible discovery ... or subjects a person to undue burden. *See* Fed.R.Civ.P. 45(d)(3); *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007). Additionally, EBG and EBGA, as non-parties, are afforded greater protection from discovery than a normal party. See *Laxalt v. McClatchy,* 116 F.R.D. 455, 458 (D. Nev. 1986); *Stamy v. Packer*, 138 F.R.d. 412, 419 (D.N.J. 1990). A subpoena should not be enforced if the reason for resisting discovery outweighs the need for the discovery. *See e.g., Food Lion v. United Food & Commercial Workers Union*, 100 F.3d 1007, 1012 (D.C. Cir. 1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case."); *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 40 (1st Cir. 2003)(quashing subpoena where purported relevance of documents was marginal and speculative). Based on the overreaching and impermissible nature of Spay's non-party subpoenas, it is respectfully submitted that the Court should exercise its authority to quash both subpoenas.

FIRM:25707113v2

A.     **The Subpoenas are Unduly Burdensome and the Categories of Documents Seek Irrelevant Evidence**

The question of burdensomeness and expense involved in complying with the subpoena demands that the subpoenas be quashed. It is well settled that a subpoena may be quashed if it "is unreasonable or oppressive." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984); Fed.R.Civ.P. 45(d)(3)(A)(iv).   Courts consider the following factors in determining whether a subpoena is reasonable: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity. *Schmulovich* at *4, (citing to 9 JAMES WM. MOORE, ET AL., Moore's Federal Practice ¶ 45.32 (3d ed. 2006)); *see also North Carolina Right to Life v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).  The status of a witness as a non-party entitles the witness to consideration regarding expense and inconvenience, and undue burden can be found when a subpoena to a non-party is facially overbroad. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49, 51 (S.D.N.Y. 1996); *North Carolina*, 231 F.R.D. at 51.

Here, the scope of the subpoenas is clearly overly broad on their face. The subpoenas request all documents since 2006 which identify names of clients unrelated to this litigation in several areas of representation, client and attorney documents, and the non-parties' financial information.  The majority of the categories utterly fail to describe the documents sought with any particularity.   Furthermore, according the definition of "document" set forth in the subpoenas, they effectively seek every document generated, received or maintained over an eight year period for unnamed parties that EBG and EBGA have represented or advised. Consequently, the subpoenas inherently call for the production of documents that are wholly

7

irrelevant to the underlying action, and will subject numerous EBG and EBGA employees in several offices to countless hours of research, analysis and compilation. The subpoenas are unreasonable under the foregoing test and run afoul of Rule 45's prohibitions, including Rule 45(d)(1) which mandates that "a party or attorney responsible for issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." What Spay seeks blatantly poses such an impermissible undue burden and expense on a non-party to gather, collate, and produce innumerable irrelevant documents in a litigation where the non-parties have no interest or stake in the outcome.

Further, discovery may not be had regarding a matter which is not "relevant to the subject matter involved in the pending action, where compliance is unduly burdensome, or where the potential harm outweighs the benefits." *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1323 (Fed.Cir.1990); *see also St. John v. Napolitano*, 274 F.R.D. 12, 15 (D.D.C. 2011) (Court must look to whether the discovery sought may be relevant to a claim or defense or likely to lead to such evidence). Specifically, as alluded to above, Spay's subpoenas seek documents for an eight-year period that are simply not relevant to the matter at hand. Whether EBG or EBGA has represented or advised PBMs or Medicare Part D sponsors or whether current or former employees at either entity worked for CVS or CMS (categories 1-4, 9-10) have absolutely no bearing or arguable relevance to the Action between Spay and CVS.[4] Nor does Spay have any legitimate reason or need for either entities' financial records (category 8). By virtue of the sweeping nature of the categories, and the impermissible categories of documents being sought, Spay is engaging in a fishing expedition to delve into the business activities of two non-party

---

[4] Spay can easily access websites for EBG and EBGA to obtain the biographies of current employees who formerly worked for CMS.

8

entities without an articulable legal or factual basis.  "[I]nstead of using rod and reel, or even a reasonably sized net, [plaintiff] would drain the pond and collect the fish from the bottom. This exercise goes beyond the bounds set by the discovery rules." *In re IBM Peripherals Litigation*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977).

Plaintiff already knows full well that nothing in the pond that he now demands be emptied immediately has anything to do with the underlying case.  *See Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 522 (E.D. Tenn. 1999) ("The party seeking discovery must be able to 'articulate the possible linkage between the discovery sought and admissible evidence.' 7 Moore's Federal Practice § 37.22[2][B]."); *Micro Motion, Inc*. 894 F.2d at 1326 (Discovery may be denied "where, in the court's judgment, the inquiry lies in a speculative area."); *Mack v. Great Atlantic & Pacific Tea Company,* 871 F.2d 179, 187 (1st Cir. 1989)(Litigants are not permitted to "undertake wholly exploratory operations in the vague hope that something helpful will turn up.").  What Spay seeks will never be relevant at any stage of this litigation and should not be allowed.

Any argument that this information is necessary because Hutchinson is being deposed as a fact witness should be easily dismissed.  First, Hutchinson is being deposed to testify to events that occurred in the 2006-2007 time frame, eight years ago, when he was a government employee; he did not join EBGA until years after the facts forming the basis for his deposition. The two topics of the testimony illustrate this point even further; they deal with specific issues over which he had oversight at CMS at the time.  Given the narrow focus of the fact deposition to which Hutchinson may be subjected, there is no stepping stone providing Spay with access to the broad range of documents covering eight years from either EBG or EBGA.

9

Second, Fed.R.Evid. 401 states that relevant evidence means "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Impeachment evidence is not directly or materially relevant to a claim or a defense.  *McVicker v. King,* 266 F.R.D. 92, 97 (W.D. Pa. 2009); *see also Krase v. Graco Children Prods., Inc.*, 79 F.3d 346, 352 (2d Cir. 1996)(holding that the possibility of impeachment is generally not considered crucial to preserving a claim).  To the extent that these expansive categories are purportedly sought on the hope that they may uncover impeachment or other material does not meet the relevance requirement, nor would any such evidence regarding a non-party lead to admissible evidence.

Spay is therefore not entitled to responses to the subpoenas' categories, and it is respectfully submitted that the Court should exercise its authority to quash both subpoenas.  To do otherwise would allow a fishing expedition of a highly dubious nature.

**B.    The Subpoenas Impermissibly Infringe Upon the Attorney-Client Privilege and the Work Product Doctrine**

In addition to the unreasonable burden the subpoena at issue places upon EBG and EBGA, Rule 45 expressly provides that the court from which a subpoena has issued shall quash or modify the subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Rule 45(d)(3)(A)(iii); *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004).  As the subpoenas attempt to delve into areas that clearly implicate both the attorney-client and work product privileges, this Court should quash the subpoenas.

    1.    Attorney-Client Privilege

The attorney-client privilege protects confidential communications between attorney and client. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *In re Kellogg Brown & Root, Inc., et al*, 2014 U.S. App.  LEXIS 12115, at *5 (D.C. Cir. June 27, 2014).  The purpose of the privilege is

to "encourage full and frank communication between attorneys and their clients." *Id.*; *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). Such communication must be encouraged because "the administration of justice in a complex society depends upon the availability of sound legal advice, and in turn, the soundness of legal advice depends upon clients' willingness to present full disclosures to their attorneys." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). The privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice. *In re Kellogg Brown & Root, Inc.* at *5 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Upjohn,* 449 U.S. at 390 ("The attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice.").

Categories 1-7 clearly fall within this ambit. Each of these categories seek documents that would either constitute or reflect confidential communications between an attorney and client for purposes of securing legal advice. Spay's knowledge that the subpoenas seek such impermissible categories of documents is demonstrated by the definitions section. The term "represent", "represented", and "representation" means the engagement of EBG and EBGA for legal services. *Id.* "Advise", "advised", or "advisement" includes engagements of EBG and EBGA by clients for regulatory and legal compliance related to Medicare and Medicaid programs. Thus by their very nature, the documents Spay seeks are those evidencing legal advice that is being sought and provided. Documents falling within these categories should be shielded from discovery, (and EBG and EBGA should not be forced to expend time and resources sifting through same to find non-privileged documents) especially where they are being sought from non-parties to the Action.

11

2.    Work Product Privilege

Like the attorney-client privilege, the work product doctrine protects certain material from discovery. However, the work product doctrine is "distinct from and broader than the attorney-client privilege." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine exists to protect "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 32 (D.D.C. 2013) (quoting *Nobles*, 422 U.S. at 238). "Core" work product consisting of "mental impressions, conclusions, opinion, or legal theories" is generally afforded near absolute protection from discovery and can be discovered in only "very rate and extraordinary circumstances." *Cobell v. Norton*, 213 F.R.D. 69, 77 (D.D.C. 2003).

Similar to the argument above on attorney client grounds, the categories at issue also implicate the work product privilege.  By seeking documents which relate to this Action and communications that EBG and EBGA may have had with other attorneys that represented (or currently represent) CVS Caremark (categories 6 and 7), Spay is seeking to discover an adversary's work product prepared in anticipation of litigation against the very party issuing the subpoena.   Under these circumstances, disclosure of such work product implicates all the purposes for which the work product privilege was erected:  preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries' preparation and preventing disruption of ongoing litigation.  Allowing Spay to obtain any such documentation would impair CVS Caremark's past and present counsel from pursuing legal strategies that may have been formulated in documents and correspondence implicated here.  Moreover, it implicates documents related to EBG's and EBGA's representation of CVS Caremark.

12

Further, Spay will not be able to articulate a substantial need for any of this material. As stated above, to the extent Spay seeks this material in order to impeach the anticipated testimony of Hutchinson, such a ground is meritless given the irrelevant nature of such evidence in the discovery process. Documents falling within these categories should be shielded from discovery, especially where they are being sought from non-parties to the Action.

## CONCLUSION

For the reasons set forth herein, Epstein Becker & Green, P.C. and EBG Advisors, Inc. respectfully submit that this motion to quash the non-party subpoenas served upon them along with any other and further relief this Court deems just and proper.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: _George B. Breen_____

George B. Breen (Bar No. 428665)
1227 25th Street, NW, Suite 700
Washington, DC 20037
Tel: (202) 861-0900
Fax (202) 296-2882
gbreen@ebglaw.com

Attorneys for Epstein Becker & Green, P.C.
and EBG Advisors, Inc.

Dated: July 11, 2014

13

## CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing MEMORANDUM OF Law in Support of Motion to Quash was filed and served via hand delivery to the Court and via electronic mail on all counsel in the underlying civil action, at the following addresses:

Paul A. Traina, Esq.
Engstrom, Lipscomb & Lack, P.C.
10100 Santa Monica Blvd., 12th Fl.
Los Angeles, CA 90067-4113
Tel. (310) 552-3800
Fax (310) 552-9434
ptraina@elllaw.com

Marc S. Raspanti, Esq.
Pietragallo Gordon  et al.
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Tel. (215) 320-6200
Fax (215) 981-0082
msr@pietragallo.com

Michael I. Leonard, Esq.
Leonard Law Offices
203 N. LaSalles Street, Suite 1620
Chicago, IL 60601
Tel. (312) 380-6559
mleonard@leonardlawoffices.com

Attorneys for Defendants:

Enu Mainigi, Esq.
Williams & Connolly, LLP
725 12th Street, NW
Washington, D.C. 20005
Tel. (202) 434-5420
emainigi@wc.com

Thomas Gallagher, Esq.
Pepper Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799

14

Tel. (215) 981-4000
gallaght@pepperlaw.com

AND for United States of America

Thomas F. Johnson, Esq.
U.S. Attorneys Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel. (215) 861-8282
Fax (215) 861-8618
thomas.johnson@usdoj.gov

George B. Breen

Dated:  July 11, 2014

15